# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **WEYERHAEUSER COMPANY, ET AL,** | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:13CV00062 |
| | ) | |
| v. | ) | |
| | ) | |
| **YELLOW POPLAR LUMBER COMPANY, INC., ET AL,** | ) | |
| | ) | |
| Defendants. | ) | |

---

| | | |
|---|---|---|
| **IN RE YELLOW POPLAR LUMBER COMPANY, INC.,** | ) | Case No. 1:15CV00037 |
| | ) | |
| Debtor. | ) | |

## OPINION AND ORDER

The court has before it for decision the Application for Fees by Guardian ad Litem and Attorney for the Trustee, filed by attorney John M. Lamie. While there are no objections to the Application, it raises issues that require extended discussion.

I. FACTUAL SUMMARY AND PROCEDURAL HISTORY.

On July 17, 1928, White Oak Lumber Company filed a petition in the United States District Court for the Western District of South Carolina[1] to have Yellow Poplar Lumber Company, Inc. ("Yellow Poplar) adjudged a bankrupt. Yellow Poplar was adjudged a bankrupt and the bankruptcy case was closed in 1931. Eighty-two years later, on April 3, 2013, suit was filed in the Circuit Court of Buchanan County, Virginia, seeking a determination of the ownership of the gas estates of certain parcels of land located in Virginia, based upon a 1929 deed from Yellow Poplar's bankruptcy trustee.[2] The defendants in that action removed the case to the United States Bankruptcy Court for the Western District of Virginia. Later, at the request of the plaintiff, this court withdrew reference of the case from the bankruptcy court. On December 10, 2013, the court appointed Mr. Lamie to serve as Guardian ad Litem ("GAL") for the unknown successors in interest to

---

[1]    South Carolina was then divided into two federal judicial districts. It was reorganized as a single district in 1965. 79 Stat. 951 (1965).

[2]    The original plaintiff in this case was Plum Creek Timberlands, L.P. ("Plum Creek"). Highland Resources, Inc., intervened and was joined as a plaintiff on January 28, 2015. On September 28, 2016, Plum Creek merged with Weyerhaeuser Company, with Weyerhaeuser Company as the surviving entity. On December 31, 2016, Highland Resources, Inc., merged with Weyerhaeuser NR Company, with Weyerhaeuser NR Company as the surviving entity. Weyerhaeuser Company and Weyerhaeuser NR Company (collectively, "Weyerhaeuser") were accordingly substituted as plaintiffs.

Yellow Poplar. Order, ECF No. 101.[3]  Other parties were added to the case, asserting claims to the disputed property.

Thereafter, with the agreement of the parties, the United States District Court for the District of South Carolina reopened Yellow Poplar's bankruptcy case and transferred it in its entirety to this court. Order, *In re Yellow Poplar Lumber Co.*, Case No. 8:28-cv-01101-BHH (Closed Case No. B-1101) (D.S.C. July 20, 2015); Case No. 1:15CV00037, ECF No. 4. On August 24, 2015, this court appointed Mr. Lamie to serve as the replacement Trustee for Yellow Poplar.[4] The court later authorized the employment of Mr. Lamie in his capacity as an attorney as counsel for the Trustee, along with his law firm, Browning, Lamie & Gifford, P.C.

Certain of the ownership claims were resolved, but the remaining major claims involving the Trustee, Weyerhaeuser, and defendants Range Resources-Pine Mountain, Inc. ("RR-PM"), Range Resources-Appalachia, LLC, EQT Production Company, and EQT Production Nora, LLC, were set for jury trial, but on January 25, 2017, a few days before that trial, the Trustee notified this court that the parties had reached a settlement of the ownership claims. On February 8, 2017,

---

[3]  Unless otherwise indicated, the record citations refer to Case No. 1:13CV00062, rather than the underlying bankruptcy case, which is numbered in this court as 1:15CV00037.

[4]  The original Trustee for Yellow Poplar is long deceased.

Mr. Lamie filed a Settlement Agreement and accompanying Motion for Approval of Settlement. All parties to the Settlement Agreement subsequently filed supporting briefs. After public notice of the proposed settlement, the court held a hearing on the settlement on May 12, 2017. No objections to the settlement were submitted. An Order approving the settlement and quieting title to the subject property was entered on June 7, 2017.

On April 11, 2017, Mr. Lamie applied for payment of his fees and expenses as GAL, Trustee, and counsel to the Trustee. ECF No. 536. He filed a supplement to his application on June 9, 2017. ECF No. 551. As GAL, Mr. Lamie provided 137 hours of legal services at an hourly rate of $210 per hour, resulting in fees amounting to $28,770. ECF No. 551. He also incurred costs of $315.48. ECF No. 536-2. As counsel to the Trustee, he provided 206.10 hours of legal services at an hourly rate of $250 per hour, resulting in fees amounting to $51,525. ECF No. 551. He also incurred costs of $5,965. ECF No. 536-2. Mr. Lamie has requested a fee enhancement that would bring his total requested fee award to $325,000. ECF No. 551. For the reasons stated below, I will grant his application.

## II. FEES AND COSTS FOR GAL.

Because the unknown successors in interest to Yellow Poplar were named as defendants, Mr. Lamie was appointed to serve as GAL for those unknown parties. *See* Fed. R. Civ. P. 17 (c)(2). Mr. Lamie is entitled to seek payment of fees for, as

well as reimbursement of costs incurred in the course of, his service as GAL. *See Doe v. Kidd*, 656 F. App'x 643, 658 (4th Cir. 2016) (unpublished). Since Yellow Poplar's possible creditors and owners were the substantial beneficiary of Lamie's services as GAL, it is appropriate that the fees and costs be paid from Yellow Poplar's estate as taxed costs. Fed. R. Civ. P. 54(d)(1).

As I have previously found in this case, $210 per hour is a reasonable rate for a GAL in this case. Order, June 7, 2017, ECF No. 549 (granting petition of another GAL for certain other unknown parties at $210 per hour); s*ee Doe v. Kidd*, 656 F. App'x at 659-60 (noting that GAL hourly rates between $150-$250 have been found to be reasonable). In addition, the total fees and costs requested here are reasonable under the circumstances. I will therefore grant Mr. Lamie's application for fees in his capacity as GAL in the amount of $28,770 and his costs in the amount of $315.48.

Pursuant to the Settlement Agreement, costs attributable to guardians appointed by the court are to be shared in proportion to the ownership division for Tract 11 of the disputed property. Settlement Agreement ¶ 9, ECF No. 520-1.

### III. FEES AND COSTS FOR TRUSTEE AND COUNSEL TO THE TRUSTEE.

#### A. Applicable Law.

##### 1. Availability of Fee Award.

This matter is governed by the Bankruptcy Act of 1898 ("1898 Bankruptcy Act") and the 1973 Rules of Bankruptcy Procedure ("Former Bankruptcy Rules"). See Op & Order 3-4, ECF No. 397. I thus consider the appropriateness of Mr. Lamie's requested fees and costs under these statutes and rules.

With regard to a Trustee's compensation, the 1898 Bankruptcy Act states:

> Trustees shall receive, as full compensation for their services, payable after they are rendered . . . from estates which they have administered, such commissions on sums to be paid as dividends and commissions as may be allowed by the courts, not to exceed . . . one per centum on such sums in excess of ten thousand dollars.

Bankruptcy Act § 48(a) (1898) (repealed). In addition, where a Trustee performs any court-authorized "legal or other service" that are not required as part of his bankruptcy Trustee duties, he is entitled to "[a]dditional compensation" beyond the statutory cap. Fed. R. Bankr. P. 219(c)(2) (1973).

An attorney who performs "professional services" in connection with a case, including serving as counsel to the Trustee, is also entitled to compensation. Fed. R. Bankr. P. 219(c)(3) (1973) ("Compensation may be allowed an attorney . . . for professional services."). Such professional services must "requir[e] and utiliz[e] legal skill," *In re Emergency Beacon Corp.*, 43 B.R. 672, 674-75 (Bankr. S.D.N.Y.

1984), and be previously authorized by the court. *In re Kornstein's, Inc.*, 56 B.R. 481, 482 (Bankr. D.R.I. 1985). The compensation of such attorney is not subject to the one percent statutory cap; instead, it must simply be "reasonable." Fed. R. Bankr. P. 219(c)(1) (1973) ("The compensation allowable by the court to a trustee . . . [or] attorney . . . shall be reasonable."). See also Fed. R. Bankr. P. 219 (1973) advisory committee's note ("[A]llowances to attorneys . . . are not subject to the limitations imposed by § 48 of the Act on the compensation of . . . trustees.").

## *2. Amount of Fee Award.*

Any compensation given to a Trustee performing legal services or an attorney serving as counsel to a Trustee must be "reasonable." Fed. R. Bankr. P. 219(c). The factors courts must consider in determining whether compensation is "reasonable" have evolved over time. Former Bankruptcy Rule 219(c)(1) enumerates specific factors that courts should consider in awarding a Trustee's or attorney's compensation: "the nature, extent, and value of the services rendered as well as . . . the conservation of the estate and the interests of creditors." Fed. R. Bankr. P. 219(c)(1) (1973). The Advisory Committee further stated that the "principal factors which enter into a determination of what is reasonable are the time spent, the intricacy of the questions involved, the size of the estate . . ., the results obtained and the 'economic spirit' of the Bankruptcy Act to curtail

unnecessary expenses." Fed. R. Bankr. P. 219 (1973) advisory committee's note (quoting *In re Paramount Merrick, Inc.*, 252 F.2d 482, 485 (2d Cir. 1958)).

The Fourth Circuit has expanded on these factors. In 1976, echoing the Advisory Committee, it held in a bankruptcy case that courts must consider (1) "the time spent," (2) "the character of the services rendered," (3) "the results achieved," (4) "the size of the estate," (5) "the evidence relating to the services rendered," and (6) "'the economic spirit' of the [Bankruptcy] Act." *New England Merchs. Nat'l Bank v. O'Donnell* (*In re Farrington Mfg. Co.*), 540 F.2d 653, 657 (4th Cir. 1976). A court's ultimate goal, it explained, is to balance the "public interest in attracting competent counsel in bankruptcy proceedings" with "doing equity to the estate and its creditors." *Id.* (citing *Jacobowitz v. Double Seven Corp.*, 378 F.2d 405, 408 (9th Cir. 1967)).

Two years later, the Fourth Circuit further expanded this analysis by adopting the twelve factors enumerated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), holding that "these factors must be considered by district courts . . . in arriving at a determination of reasonable attorneys' fees" and that "any award must be accompanied by detailed findings of fact with regard to the factors considered." *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978).

The twelve *Johnson* factors are:

(1) [T]he time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* at 226 n.28. *Barber* was not a bankruptcy case, but the Fourth Circuit has applied its holding to attorney's fee awards in the bankruptcy context. *Harman v. Levin*, 772 F.2d 1150, 1152 (4th Cir. 1985).[5] The court has also provided additional guidance for district courts applying the *Johnson* factors:

[D]istrict courts [should] . . . first ascertain the nature and extent of the services supplied by the attorney from a statement showing the number of hours worked and an explanation of how these hours were spent. The court should next determine the customary hourly rate of compensation. These are essentially Johnson factors 1 and 5. The court should then multiply the number of hours reasonably expended by the customary hourly rate to determine an initial amount for the fee

---

[5] *Harman* itself was governed by the modern Bankruptcy Code, but it is probable that the Fourth Circuit would apply the *Barber* factors in cases governed by the 1898 Bankruptcy Act as well. *See Neville v. Eufaula Bank & Tr. Co. (In re U.S. Golf Corp.)*, 639 F.2d 1197, 1201 (5th Cir. 1981) (applying *Johnson* factors to case governed by 1898 Bankruptcy Act); *Harman*, 772 F.2d at 1152 (citing *U.S. Golf Corp.* to support holding that twelve-factor analysis "is appropriate to determine attorney's fee awards in bankruptcy" and specifically noting that *U.S. Golf Corp.* was governed by the 1898 Bankruptcy Act). At least one bankruptcy court in this circuit has applied the *Barber* factors in a case governed by the 1898 Bankruptcy Act. *See In re Elkins Energy Corp.*, 10 B.R. 415, 417 (Bankr. W.D. Va. 1981) (considering both *Farrington*'s bankruptcy-specific factors as well as *Barber*'s generic factors).

award. Finally, the court should adjust the fee on the basis of the
other factors, briefly explaining how they affected the award.

*Anderson v. Morris*, 658 F.2d 246, 249 (4th Cir. 1981), *disavowed on other*

*grounds by Bernstein v. Menard*, 728 F.2d 252 (4th Cir. 1984). This guidance

essentially requires courts to start by calculating the so-called "lodestar" and then

adjust that figure as necessary based on the other ten *Johnson* factors.

### 3. Availability of Fee Enhancement.

Despite admonishments to consider the "conservation of the estate" and the

"economic spirit" of the 1898 Bankruptcy Act, fee enhancements — sometimes

called "bonuses" or "premiums" — are available to counsel who have achieved

exceptional results. There is "no statutory bar . . . to the awarding of a premium if

justified." *In Re Aminex Corp.*, 15 B.R. 356, 360-62 (Bankr. S.D.N.Y. 1981).

Moreover, Former Bankruptcy Rule 219's mandate to "vigilantly control fees and

expenses" does not preclude the award of a premium; "[i]f under the circumstances

of a particular case the award of compensation, even if justifiably enhanced by a

premium, falls within the dictates of reasonableness, the 'economical spirit' of the

Act has been served." *Id.* at 364.

In *Aminex*, also governed by the 1898 Bankruptcy Act and 1973 Former

Bankruptcy Rules, the bankruptcy court for the Southern District of New York

awarded counsel for the receiver an additional $200,000 for "spectacular results."

*Id.* at 362. The court concluded that in light of the "extraordinary efforts and

remarkable results achieved" by the firm, "to deny a premium ... would impermissibly be confusing 'economical' with 'parsimonious' in total derogation of the spirit of the Bankruptcy Act." *Id.* at 364. Other courts have reached similar conclusions. *See, e.g.*, *Lawler v. Teofan* (*In re Lawler*), 807 F.2d 1207, 1214 (5th Cir. 1987) (awarding enhancement in acknowledgement of counsel's "exceptional work" and noting that enhancement was on the "lower spectrum of reasonableness" required by the 1898 Bankruptcy Act); *Rose Pass Mines, Inc. v. Howard*, 615 F.2d 1088, 1092 (5th Cir. 1980) (upholding enhancement of hourly rate where firm provided legal services of "excellent quality"); *In re Nova Real Estate Inv. Tr.*, 30 B.R. 347, 348 (Bankr. E.D.Va. 1983) (awarding premium to law firm despite the 1898 Bankruptcy Act's "caveat of economy" and stating that "one of the factors to be considered in fixing fees for counsel is the result obtained, that is, the bottom line amount recovered for the estate"); *In re Penn-Dixie Indus., Inc.*, 18 B.R. 834, 837-39 (Bankr. S.D.N.Y. 1982) (awarding premiums where one firm's success was "the result of [its] skillful and effective performance" and where all firms' services were "necessary and essential"). *But cf. Burgess v. Klenske* (*In re Manoa Fin. Co.*)*, 853 F.2d 687, 692 (9th Cir. 1988) (noting a strong presumption that the lodestar is sufficient and requiring an attorney seeking an enhancement to show that "the results obtained were not reflected in" the lodestar

and that "the bonus is necessary to make the award commensurate with compensation for comparable nonbankruptcy services").

The Supreme Court has periodically addressed the question of whether courts awarding attorney's fees under federal fee-shifting statutes may grant enhancements above the lodestar amount. These cases have drastically curtailed, if not entirely eliminated, district courts' discretion to award enhancements. *See Perdue v. Kenny A. ex rel Winn*, 559 U.S. 542 (2010) (§ 1988); *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 727 (1987) (Clean Air Act); *City of Burlington v. Dague*, 505 U.S. 557, 567 (1992) (Solid Waste Disposal and Clean Water Acts); *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565-66 (1986) (Clean Air Act). In *Dague* and the *Delaware Valley* cases, the Court held generally that there is a "strong presumption that the lodestar figure is reasonable," that the lodestar "includes most, if not all, of the relevant factors constituting a reasonable attorney's fee," and that "an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation." *Perdue*, 559 U.S. at 553-54 (citing cases) (internal quotation marks omitted). Most recently, in *Perdue*, the Court listed three very narrow, limited circumstances under which an enhancement would be appropriate: where there is "specific proof" that "the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value," where

the case "include[d] an extraordinary outlay of expenses and the litigation is exceptionally protracted," and where there was an "exceptional delay in the payment of fees." *Id.* at 554-56.

Application of this line of Supreme Court cases, however, appears to be limited to federal fee-shifting statutes — that is, those statutes that shift the cost of litigation to the losing party. *See Dague*, 505 U.S. at 562 (stating that Supreme Court "case law construing what is a 'reasonable' fee applies uniformly" to all "federal fee-shifting statutes"). Neither the modern Bankruptcy Code nor the 1898 Bankruptcy Act is a fee-shifting statute. They merely make provisions for the compensation of Trustees and attorneys from the assets of the estate; they do not "shift" the cost of the case to any party. While the Fourth Circuit has not addressed the question of whether these cases apply in the bankruptcy context, the Fifth Circuit has expressly held that they do not. ASARCO, L.L.C. v. Baker Botts, L.L.P. (*In re ASARCO, L.L.C.*), 751 F.3d 291, 296 (5th Cir. 2014). Thus, absent any indication that the Fourth Circuit would apply this line of cases to attorney's fee awards in bankruptcy cases, these restrictions on fee enhancements need not be considered here.

## B.  Mr. Lamie's Fee Award.

### *1. Lodestar.*

Mr. Lamie has submitted a "detailed statement of . . . the services rendered" following his appointment as Trustee on August 24, 2015.  Fed. R. Bankr. P. 219(a) (1973).  As Trustee's counsel, between November 29, 2016, and April 11, 2017, he provided 119.20 hours of authorized legal services.  Suppl. Appl. for Fees 3, ECF No. 551; Case No. 1:15-CV-00037, Order of Emp't, ECF No. 22 (authorizing legal services).  Because these services were authorized by the court and required legal skill, Mr. Lamie may properly be compensated for this work in his capacity as counsel to the Trustee, so long as such compensation is reasonable. See *supra* at III.A.1.

While he was Trustee, but prior to his employment as Trustee's counsel, Mr. Lamie performed 86.90 hours of work on behalf of the estate.  Suppl. Appl. for Fees 3, ECF No. 551.  All of these hours, however, were spent providing "legal services in the litigation over the gas rights," rather than performing services statutorily required of the Trustee.  *Id.*; List of Services, ECF No. 536-1.  The court authorized Mr. Lamie to perform these services when it appointed him as Trustee. Op. & Order 7, ECF No. 397.  Because these services were of a legal nature and authorized by the court, Mr. Lamie may properly be compensated for this work, so long as such compensation is reasonable.  See *supra* at III.A.1.  Moreover, because

Mr. Lamie spent this time performing additional legal services beyond the scope of the duties of a Trustee, the 1898 Bankruptcy Act's statutory cap does not apply. Fed. R. Bankr. P. 219(c)(2) (1973).

In total, Mr. Lamie has rendered 206.10 hours of authorized legal services in his capacities as Trustee and Trustee's counsel. Suppl. Appl. for Fees 3, ECF No. 551. He has requested compensation at a rate of $250 per hour. *Id.* I find $250 to be a reasonable rate for litigation legal services in this district. *See Chadwell v. Lee Cty. Sch. Bd.*, 535 F. Supp. 2d 586, 604 (W.D. Va. 2008). Mr. Lamie's lodestar therefore amounts to $51,525.

*2. Fee Enhancement.*

In addition to lodestar fees amounting to $51,525 for his work as Trustee and Trustee's counsel and $28,770 for his work as GAL, Mr. Lamie has requested a fee enhancement of $244,705, which would bring his total fee award to $325,000. *Id.* For the reasons set forth below, I find this award to be reasonable and will grant Mr. Lamie's request for an enhancement.

As I explain above, there is no statutory or other bar to a fee enhancement in this case, and an award that includes an enhancement can still be "reasonable" in light of the factors to be considered. See *supra* at III.A.3. In order to determine whether a fee enhancement above the lodestar amount is reasonable, a court must

consider the ten remaining *Johnson* factors.[6]  *See Anderson*, 658 F.2d at 249.  I

consider each factor in turn.

*Factor Two: The novelty and difficulty of the questions raised.*

This was an unusual case that required Mr. Lamie to address obscure issues,

including the interpretation of deeds dating back to the late 19th century and the

reopening of a bankruptcy proceeding from 1928 governed by a statute from 1898.

The case was complex, involving dozens of parties and gas rights to multiple

parcels of land.   As one of the parties noted in its brief in support of approval of

the settlement:

> There are three competing claims to the gas estate on Tract 11 and two
> claims to the gas estate on Tract 4.  The claims depend not only on
> record title to the properties but extrinsic evidence spanning 100 years.
> Motions for summary judgment and pretrial filings have disclosed
> large collections of documentary and testimonial evidence on
> ownership.  There are complicated chains of title and hundreds of
> pages of old bankruptcy records to sort out.  There are scores of
> historical maps and other records and hundreds of pooling
> applications, transcripts, and orders.  There are experts on surveying,
> hydrology, history, and title issues.  There are additional witnesses on
> prior title work, pooling, production, and tax issues.

Mem. Supp. Mot. 3-4, ECF No. 542.

---

[6]   The other two *Johnson* factors, time and labor expended (Factor One) and
customary fee for like work (Factor Five), are incorporated into the court's analysis via
the lodestar calculation.

*Factor Three: The skill required to properly perform the legal services rendered.*

This case required an attorney with experience in both bankruptcy and civil litigation as well as knowledge of real estate, property, and bankruptcy law. As this court noted on at least one occasion, Mr. Lamie is one of few attorneys in this region who possesses the skills and experience necessary to serve as Trustee and counsel to the Trustee in this case.

*Factor Four: The attorney's opportunity costs in pressing the instant litigation.*

Between October 31, 2013 — when he first became involved in the case — and the present date, Mr. Lamie devoted hundreds of hours to this case while receiving zero compensation. He has certified to the court that he "has had to refer matters he would have accepted out to other counsel in his firm and also outside his firm." Mem. Supp. Appl. for Fees 5, ECF No. 543.

*Factor Six: The attorney's expectations at the outset of the litigation.*

By agreeing to serve as GAL and Trustee in this case, Mr. Lamie shouldered a substantial risk. He was involved with a defunct company that went bankrupt nearly a century ago. At the outset of this litigation, Yellow Poplar had no assets, no known owners, and no known parties of interest. Had the case proceeded to trial — as it was very close to doing — and had Yellow Poplar estate lost, Mr.

Lamie would have come away with nothing. He was aware of this possibility but nevertheless accepted his appointments.

*Factor Seven: The time limitations imposed by the client or circumstances.*

There were no time limitations to speak of in this case.

*Factor Eight: The amount in controversy and the results obtained.*

The stakes and amount in controversy in this case were significant. This case centered around ownership of gas rights on multiple parcels of land, which included the right to receive both future and escrowed gas royalties. At the time of settlement, the escrowed gas royalties alone amounted to over $4 million. *Id*. at 6.

The results Mr. Lamie has obtained on behalf of Yellow Poplar's estate are exceptional. Ultimately, this case involved the rights to the gas estates on two parcels of land, presenting multiple different legal claims, involving numerous differing legal theories. Pursuant to the parties' settlement, the Trustee and estate of Yellow Poplar came away from this case with a 50 percent ownership in one gas estate and 67 percent ownership of the other. Order Approving Settlement, ECF No. 550. In light of the complexity of the issues and the claims raised by the other parties, the fact that Mr. Lamie was able to obtain such a favorable settlement agreement is remarkable.

*Factor Nine: The experience, reputation and ability of the attorney.*

As I note in relation to Factor Three, Mr. Lamie possesses the extensive experience and knowledge required to serve as Trustee and Trustee's counsel in this case. Moreover, he has a good reputation in the community and, as stated above, performed his services admirably.

*Factor Ten: The undesirability of the case within the legal community in which the suit arose.*

As Yellow Poplar's advocate, Mr. Lamie was litigating against and negotiating with counsel from large law firms representing well-funded entities. The case involved obscure issues, including the interpretation of archaic deeds. Perhaps most importantly, the circumstances of the case meant that Mr. Lamie was representing an estate with zero assets on a contingency basis. As I note in relation to Factor Six, if the matter had proceeded to trial and Mr. Lamie had lost, he would not have received any compensation for his services. The risk involved in taking the case, in addition to the complexity of the issues and the reputation and resources of opposing counsel, made this case a somewhat undesirable gamble.

*Factor Eleven: The nature and length of the professional relationship between attorney and client.*

The professional relationship between Mr. Lamie and Yellow Poplar extends back to 2013, when Mr. Lamie was first appointed GAL for the estate's unknown successors in interest. The nature of the relationship is somewhat unusual, given

both that Yellow Poplar's successors in interest were unknown and that Yellow Poplar was a defunct entity with no known owners.

*Factor Twelve: Attorney's fee awards in similar cases.*

The nature of this inquiry necessarily means that the amount constituting a "reasonable" bonus will vary with each case. However, an enhancement of $244,705 is not overly dissimilar to awards granted by other courts in bankruptcy cases.

In *Aminex*, the law firm requested a bonus of $500,000, in addition to fees of $2.4 million. 15 B.R. at 362. The court noted that the total compensation sought by the firm, including this bonus, amounted to "almost 14 % of the estate — *not an unacceptable ratio*." *Id.* at 363 (emphasis added). Ultimately, however, the court reduced the bonus to $200,000, which was an 8.4 percent increase over the lodestar. *Id.* at 364. The firm's compensation amounted to 12.4 percent of the estate.

In *Matter of Lawler*, the Fifth Circuit considered the *Johnson* factors in upholding an enhancement of 70 percent. 807 F.2d at 1214. In *Rose Pass Mines*, the same court awarded at 17.6 enhancement. 615 F.2d at 1092. In *Nova Real Estate Investment Trust*, the bankruptcy court awarded a premium of 10 percent. 30 B.R. at 347. Finally, in *Penn-Dixie Industries*, the bankruptcy court awarded the requested enhancements of 9.1 percent, 10.2 percent, and 23.4 percent to three

of the participating law firms.  18 B.R. at 836-39.  A fourth law firm requested an enhancement of 157.6 percent, but the court granted an enhancement of only 15.8 percent, noting that "[w]hile an award of premium compensation is not inappropriate, the requested 'bonus' . . . sought herein is all out of proportion to . . . the mission of the firm in these proceedings."  *Id.* at 837-39.

Here, Mr. Lamie has requested an enhanced fee of $296,230, which is an increase of $244,705 above the lodestar amount of $51,525.[7]  Suppl. Appl. for Fees 4, ECF No. 551.  An enhanced award of $296,230 would comprise approximately 14.8 percent of an estate worth $2 million.[8]

It is evident that consideration of the *Johnson* factors weighs in favor of awarding Mr. Lamie a fee enhancement in this case.  Of the ten factors to be considered apart from the lodestar, only Factor Twelve potentially weighs against award of an enhancement.  However, while the enhancement requested by Mr. Lamie is proportionally higher than enhancements granted in other cases, the circumstances presented by this case are somewhat unique.  Moreover, Mr. Lamie's compensation would amount to only a small percentage of the presently

---

[7]  Mr. Lamie requests a total fee of $325,000, inclusive of payment for his work as GAL.  Because I consider his compensation as GAL separately, I construe this request as being for an enhancement for $325,000 less his fees as GAL ($28,770), or $296,230.

[8]  Because of the rights to future gas royalties, the ultimate value of Yellow Poplar's estate is as yet unknown, but Mr. Lamie has certified to the court that upon disbursement of presently escrowed funds to which Yellow Poplar is now entitled, Yellow Poplar will receive over $2 million.  Mem. Supp. Appl. for Fees 3, ECF No. 543.

projected estate. I believe such an award is reasonable, particularly in light of the fact that without Mr. Lamie's efforts, the estate would have nothing.

Of the other nine factors, only Factor Seven is neutral, weighing neither for nor against award of an enhancement. The remaining eight factors weigh in favor of an enhancement. Indeed, four of those factors — Two, Three, Six, and especially Eight — weigh heavily in favor of an enhancement. Overall, given the complexity of the case and the spectacular results Mr. Lamie has obtained, I believe it would be unjust not to award an enhancement, and I find the requested enhancement to be reasonable in light of the circumstances. I will therefore grant Mr. Lamie's request for an enhanced fee in the amount of $296,230.

### C. Reimbursement of Costs.

The law provides for full reimbursement of costs incurred both by a Trustee and by counsel to a Trustee in the course of their services. Fed. R. Bankr. P. 219(a) (1973); *see also* Fed. R. Civ. P. 54(d)(1). Mr. Lamie has submitted the required "application setting forth a detailed statement of (1) the . . . expenses incurred, and (2) the amounts requested." Fed. R. Bankr. P. 219(a) (1973). See Appl. for Fees, ECF No. 536; Suppl. Appl. for Fees, ECF No. 551; List of Costs, ECF No. 536-2. There is no objection to Mr. Lamie's application, and the costs requested appear to be reasonable under the circumstances. Accordingly, I will

grant Mr. Lamie's application for reimbursement of costs in the amount of $5,965.[9]

IV. CONCLUSION.

For the reasons stated, it is hereby **ORDERED** as follows:

1. The Application and Supplement to Application for Fees by GAL and Attorney for the Trustee (ECF Nos. 536 and 551) are GRANTED;

2. The GAL fees and costs in the total amount of $29,085.48 are directed to be paid to John M. Lamie from the proceeds to be paid by the Virginia Gas and Oil Board pursuant to the Order Approving Settlement and Quieting Title, ECF No. 550, and the parties' Settlement Agreement, ECF No. 520-1, in the following proportions:

    Weyerhaeuser (25%) - $7,271.37;

    RR-PM (25%) - $7,271.37;

    Trustee (50%) - $14,542.74; and

---

[9] As explained above, see *supra* at III.B.1, the services and costs for which Mr. Lamie seeks payment were all rendered in relation to authorized legal services rendered by him as Trustee or as attorney for the Trustee. In addition, reimbursement for costs incurred by a Trustee is not subject to the 1898 Bankruptcy Act's cap on Trustee compensation. J. Adriance Bush, *The National Bankruptcy Act of 1898,* p. 427 (1899) (noting that a trustee's compensation does "not include expenses necessarily incurred in the performance of [his] duties and allowed upon the settlement of [his] accounts"); Fed. R. Bankr. P. 219(c)(2) (1973) (stating that "[t]he compensation allowed by the Act to a trustee . . . shall not be deemed to cover expenses necessarily incurred in the performance of his duties").

3. The Trustee's and attorney's fees and costs in the total amount of $302,195 are directed to be paid by the Trustee jointly to John M. Lamie and Browning, Lamie & Gifford P.C., from the proceeds to be paid to the Estate of Plum Creek by the Virginia Gas and Oil Board as aforesaid.[10]

ENTER: June 28, 2017

/s/ James P. Jones
United States District Judge

---

[10] To recapitulate, all of the above amounts represent a GAL fee of $28,770, GAL costs of $315.48, Trustee legal fee of $296,230, and Trustee's costs of $5,965.